# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

ROBERT LENT,                          :        Civil No.  3:18-CV-1533
                                      :
            Plaintiff,                :
                                      :
    v.                                :
                                      :        (Magistrate Judge Carlson)
NANCY BERRYHILL,                      :
Acting Commissioner of Social         :
Security,                             :
                                      :
            Defendant.                :

## MEMORANDUM OPINION

## I.    Introduction

Social Security Administrative Law Judges ("ALJs") are required to make a series of legal, medical, and factual judgments in the course of adjudicating disability claims. They perform this task against the backdrop of a five-step sequential analytical paradigm. The third step in this analytical paradigm is potentially outcome determinative. At Step 3 of this analysis the ALJ must ascertain whether the claimant meets specified listing criteria. If the claimant's condition satisfies all of the criteria of a listing prescribed by the Social Security Administration, then that claimant is deemed disabled, *per se*.

Two overarching legal principles govern this Step 3 assessment. First, the burden of proof on the claimant at Step 3 is high. In order to qualify for benefits by

1

showing that an impairment, or combination of impairments, is equivalent to a listed impairment, the plaintiff bears the burden of presenting "medical findings equivalent in severity to *all* the criteria for the one most similar impairment." Sullivan v. Zebley, 493 U.S. 521, 531 (1990); 20 C.F.R. § 416.920(d). An impairment, no matter how severe, that meets or equals only some of the criteria for a listed impairment is not sufficient. Id.

However, given the importance of this Step 3 analysis to the outcome of many disability claims, it is incumbent upon ALJs to adequately articulate the basis for a Step 3 determination. Thus, the ALJ's treatment of this issue must go beyond a summary conclusion, since a bare conclusion "is beyond meaningful judicial review." Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 119 (3d Cir. 2000). On this score, case law "does not require the ALJ to use particular language or adhere to a particular format in conducting his analysis. Rather, the function . . . is to ensure that there is sufficient development of the record and explanation of findings to permit meaningful review." Jones v. Barnhart, 364 F.3d 501, 505 (3d Cir. 2004). This goal is met when the ALJ's decision, "read as a whole," id., permits a meaningful review of the ALJ's Step 3 analysis. But it is not satisfied when "the ALJ's conclusory statement [at Step 3] is . . . beyond meaningful judicial review." Burnett, 220 F.3d at 119.

This case illustrates the importance of adequate articulation by an ALJ when conducting this Step 3 analysis. It is undisputed that Robert Lent suffered a massive heart attack in his 30's, a catastrophic cardiac event which has left him severely impaired and unable to return to his past worker as a trucker. Lent also suffers from significant and profound coronary artery disease. Coronary artery disease can satisfy a listing requirement and define a worker as *per se* disabled. In Lent's case, the ALJ acknowledged the existence of a potentially applicable listing that governed Lent's severe coronary condition, Listing 4.04, but discounted the application of this listing to Lent's case in a summary three-sentence analysis, which appears to misstate and understate material facts concerning Lent's condition. Because the ALJ's treatment of this issue, "read as a whole," in our view does not permit a meaningful review of the ALJ's Step 3 analysis, this case will be remanded for further consideration by the Commissioner. Jones, 364 F.3d at 505.

## II.  Statement of Facts and of the Case

Robert Lent was 39 years old in the Summer of 2016 when he suffered a massive heart attack. (Tr. 27.) At that time, Lent was employed as a truck driver, had a high school education, and had previously served in the United States Marine Corps. (Tr. 27, 57.)

In June of 2016, Lent experienced a heart attack. (Tr. 223-357.) When he arrived at the hospital, Lent was assessed as suffering from "a condition in which there was a high probability of imminent or life threatening deterioration." (Tr. 233.) He underwent an immediate angioplasty procedure that revealed significant evidence of coronary artery occlusion, or blockage. Thus, doctors observed a 100% occlusion of Lent's left anterior descending artery; a 60% ostial narrowing of the major diagonal artery; a 25% ostial narrowing of the first left obtuse marginal branch or these arteries; and a long mid-portion 90% occlusion of the right coronary artery. (Tr. 242.) These coronary occlusions were addressed with balloon angioplasty and bare metal stenting, which provided immediate short-term improvement in his coronary artery condition. (Id.) However, evidence suggests that this coronary artery condition remained a severe, and potentially disabling, impairment.

In particular, one month later on July 24, 2016, Lent was transported by ambulance to the Danville Regional Medical Center ER for chest pain. (Tr. 424.) He reported a persistent, sudden onset chest pain that "would not go away," brought on by mild activity when he was walking. (Tr. 424.) At that time, a cardiac catheterization was conducted, which revealed significant additional coronary artery ischemia and disease, including 10% in-stent restenosis of the right coronary artery, 80% ostial stenosis of the first diagonal artery located in the midportion of the stent,

and 50% stenosis of the first obtuse marginal vessel in the circumflex branch of the left coronary artery. (Tr. 433.)

Shortly after suffering this second coronary episode, on August 17, 2016, Lent applied for Social Security disability benefits pursuant to Title II of the Act, citing his coronary condition as a disabling impairment. (Tr. 16.) It was against this medical and factual backdrop that the ALJ conducted a hearing considering Lent's disability application on April 13, 2017. (Tr. 53-86.) At this hearing, Lent and a vocational expert appeared and testified. (Id.) In the course of his testimony, Lent described how he had experienced multiple cardiac episodes marked by chest pain and shortness of breath, indicating that he suffered from these symptoms on a regular, daily basis. (Tr. 72.)

Following this hearing, on June 13, 2017, the ALJ issued a decision denying Lent's application for disability benefits. (Tr. 16-28.) In this decision, the ALJ first found that Lent met the insured requirements of the Act, (Tr. 18), and then at Step 2 of the five step sequential analysis process that applies to Social Security disability claims concluded that Lent experienced the following severe impairments: coronary artery disease, post-status myocardial infarction and angioplasty with stenting, and ischemic cardiomyopathy. (Id.)

Critically for our purposes, the ALJ went on at Step 3 of this process to analyze whether any of Lent's coronary conditions were *per se* disabling. (Tr. 21-22.) On this score, the ALJ acknowledged that there was a specific listing which applied to coronary artery disease like that which was clearly experienced by Lent—Listing 4.04. This listing, in part, provided that a claimant would meet the listing requirements if he suffered from:

> Coronary artery disease, demonstrated by angiography (obtained independent of Social Security disability evaluation) or other appropriate medically acceptable imaging,[revealed] both 1 and 2:
>
> 1. Angiographic evidence showing:
> a. 50 percent or more narrowing of a nonbypassed left main coronary artery; or
> b. 70 percent or more narrowing of another nonbypassed coronary artery; or
> c. 50 percent or more narrowing involving a long (greater than 1 cm) segment of a nonbypassed coronary artery; or
> d. 50 percent or more narrowing of at least two nonbypassed coronary arteries; or
> e. 70 percent or more narrowing of a bypass graft vessel; and
>
> 2. Resulting in very serious limitations in the ability to independently initiate, sustain, or complete activities of daily living.

20 C.F.R. § Pt. 404, Subpt. P, App. 1, Listing 4.04C.

With respect to the application of this particular listing to Lent's severe coronary artery disease, the ALJ's treatment of this issue was cursory. The ALJ simply quoted the pertinent text of this listing, and then, without further discussion

or analysis, stated: "In this case the claimant has an MI [myocardial infarction] and successfully underwent an angioplasty with stenting. *There is no current evidence he meets any of the requirements of 4.04A, 4.04B or 4.04C*. Therefore the claimant does not meet or equal listing 4.04." (Tr. 22) (emphasis added.) The ALJ did not reconcile this finding that Lent did not meet any of the requirements of listing 4.04C with the June 2016 angioplasty results, or the subsequent July 2016 cardiac catheterization results, both of which seemed to reveal degrees of coronary occlusion in excess of these listing requirements. In particular, the July 2016 evaluation showed significant coronary artery occlusion even after an angioplasty procedure and identified 10% in-stent restenosis of the right coronary artery, 80% ostial stenosis of the first diagonal artery located in the midportion of the stent, and 50% stenosis of the first obtuse marginal vessel in the circumflex branch of the left coronary artery. (Tr. 433.) The ALJ never mentioned these July 2016 findings when she determined that Lent did not meet any of these listing requirements and never reconciled the degree of coronary occlusion documented in this report with her conclusion that Lent met none of the listing requirements.

The ALJ then concluded that Lent retained the residual functional capacity to perform a limited range of sedentary work. (Tr. 22-27.) Having reached these conclusions, the ALJ found that Lent could not return to his past work as a trucker

but concluded that there were significant jobs in the national economy which Lent could perform and denied his disability application. (Tr. 27-28.)

This appeal followed. (Doc. 1.) On appeal, Lent challenges this ALJ decision on a number of grounds, arguing in particular that the ALJ's Step 3 analysis of these severe coronary conditions was inadequate. Because we conclude that this Step 3 analysis was not sufficiently articulated by the ALJ, for the reasons set forth below, we will remand this case for further consideration by the Commissioner.

## III.   Discussion

### A.   Substantial Evidence Review – The Role of this Court

When reviewing the Commissioner's final decision denying a claimant's application for benefits, this Court's review is limited to the question of whether the findings of the final decision-maker are supported by substantial evidence in the record. See 42 U.S.C. § 405(g); Johnson v. Comm'r of Soc. Sec., 529 F.3d 198, 200 (3d Cir. 2008); Ficca v. Astrue, 901 F.Supp.2d 533, 536 (M.D. Pa. 2012). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Pierce v. Underwood, 487 U.S. 552, 565 (1988). Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla. Richardson v. Perales, 402 U.S. 389, 401 (1971). A single piece of evidence is not

substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. <u>Mason v. Shalala</u>, 994 F.2d 1058, 1064 (3d Cir. 1993). But in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." <u>Consolo v. Fed. Maritime Comm'n</u>, 383 U.S. 607, 620 (1966). "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." <u>Leslie v. Barnhart</u>, 304 F. Supp.2d 623, 627 (M.D. Pa. 2003).

The question before this Court, therefore, is not whether the claimant is disabled, but rather whether the Commissioner's finding that he is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. <u>See</u> <u>Arnold v. Colvin</u>, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence") (alterations omitted); <u>Burton v. Schweiker</u>, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The Secretary's determination as to the status of a claim requires the correct application of the law to the facts"); <u>see also</u> <u>Wright v. Sullivan</u>, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal

matters is plenary); <u>Ficca</u>, 901 F. Supp.2d at 536 ("[T]he court has plenary review of all legal issues....").

Several fundamental legal propositions flow from this deferential standard of review. First, when conducting this review "we are mindful that we must not substitute our own judgment for that of the fact finder." <u>Zirnsak v. Colvin</u>, 777 F.3d 607, 611 (3d Cir. 2014) (citing <u>Rutherford v. Barnhart</u>, 399 F.3d 546, 552 (3d Cir. 2005)). Thus, we are enjoined to refrain from trying to re-weigh the evidence. Rather our task is to simply determine whether substantial evidence supported the ALJ's findings. However, we must also ascertain whether the ALJ's decision meets the burden of articulation demanded by the courts to enable informed judicial review. Simply put, "this Court requires the ALJ to set forth the reasons for his decision." <u>Burnett v. Comm'r of Soc. Sec.</u>, 220 F.3d 112, 119 (3d Cir. 2000). As the Court of Appeals has noted on this score:

> In <u>Burnett</u>, we held that an ALJ must clearly set forth the reasons for his decision. 220 F.3d at 119. Conclusory statements ... are insufficient. The ALJ must provide a "discussion of the evidence" and an "explanation of reasoning" for his conclusion sufficient to enable meaningful judicial review. <u>Id.</u> at 120; <u>see</u> <u>Jones v. Barnhart</u>, 364 F.3d 501, 505 & n. 3 (3d Cir. 2004). The ALJ, of course, need not employ particular "magic" words: "<u>Burnett</u> does not require the ALJ to use particular language or adhere to a particular format in conducting his analysis." <u>Jones</u>, 364 F.3d at 505.

<u>Diaz v. Comm'r of Soc. Sec.</u>, 577 F.3d 500, 504 (3d Cir. 2009).

Thus, in practice ours is a twofold task. We must evaluate the substance of the ALJ's decision under a deferential standard of review, but we must also give that decision careful scrutiny to ensure that the rationale for the ALJ's actions is sufficiently articulated to permit meaningful judicial review.

### B.    Initial Burdens of Proof, Persuasion, and Articulation for the ALJ

To receive benefits under the Social Security Act by reason of disability, a claimant must demonstrate an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 1382c(a)(3)(A); see also 20 C.F.R. §§ 404.1505(a), 416.905(a). To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in the national economy. 42 U.S.C. § 423(d)(2)(A); 42 U.S.C. § 1382c(a)(3)(B); 20 C.F.R. §§ 404.1505(a), 416.905(a). To receive benefits under Title II of the Social Security Act, a claimant must show that he or she contributed to the insurance program, is under retirement age, and became disabled prior to the date on which he or she was last insured. 42 U.S.C. § 423(a); 20 C.F.R. § 404.131(a).

In making this determination at the administrative level, the ALJ follows a five-step sequential evaluation process. 20 C.F.R. §§ 404.1520(a), 416.920(a). Under this process, the ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do his or her past relevant work; and (5) whether the claimant is able to do any other work, considering his or her age, education, work experience and residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

Between steps three and four, the ALJ must also assess a claimant's RFC. RFC is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)." Burnett v. Comm'r of Soc. Sec., 220 F.3d 112, 121 (3d Cir. 2000) (citations omitted); see also 20 C.F.R. §§416.920(e), 416.945(a)(1). In making this assessment, the ALJ considers all of the claimant's medically determinable impairments, including any non-severe impairments identified by the ALJ at step two of his or her analysis. 20 C.F.R. §416.945(a)(2).

At steps one through four, the claimant bears the initial burden of demonstrating the existence of a medically determinable impairment that prevents him or her in engaging in any of his or her past relevant work. 42 U.S.C.

§1382c(a)(3)(H)(i)(incorporating 42 U.S.C. §423(d)(5) by reference); 20 C.F.R. §416.912; Mason v. Shalala, 994 F.2d 1058, 1064 (3d Cir. 1993). Once this burden has been met by the claimant, it shifts to the Commissioner at step five to show that jobs exist in significant number in the national economy that the claimant could perform that are consistent with the claimant's age, education, work experience and RFC. 20 C.F.R. §416.912(f); Mason, 994 F.2d at 1064.

The ALJ's disability determination must also meet certain basic substantive requisites. Most significant among these legal benchmarks is a requirement that the ALJ adequately explain the legal and factual basis for this disability determination. Thus, in order to facilitate review of the decision under the substantial evidence standard, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests." Cotter v. Harris, 642 F.2d 700, 704 (3d Cir. 1981). Conflicts in the evidence must be resolved and the ALJ must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. Id. at 706-707. In addition, "[t]he ALJ must indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding." Schaudeck v. Comm'r of Soc. Sec., 181 F. 3d 429, 433 (3d Cir. 1999). Moreover, in conducting this review we are cautioned that "an ALJ's findings based on the credibility of the applicant are to be accorded great weight and

deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility.' Walters v. Commissioner of Social Sec., 127 F.3d 525, 531 (6th Cir.1997); see also Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 801 (10th Cir. 1991) ('We defer to the ALJ as trier of fact, the individual optimally positioned to observe and assess witness credibility.')." Frazier v. Apfel, No. 99-715, 2000 WL 288246, *9 (E.D. Pa. March 7, 2000). Furthermore, in determining if the ALJ's decision is supported by substantial evidence, the court may not parse the record but rather must scrutinize the record as a whole. Smith v. Califano, 637 F.2d 968, 970 (3d Cir. 1981).

### C.     Legal Benchmarks Governing Step 3 of This Sequential Analysis

This dichotomy between the Act's deferential standard of review and caselaw's requirement that ALJs sufficiently articulate their findings to permit meaningful judicial review is particularly acute at Step 3 of this disability evaluation process. At Step 3 of this sequential analysis, the ALJ is required to determine whether, singly or in combination, a claimant's ailments and impairments are so severe that they are *per se* disabling and entitle the claimant to benefits. As part of this step three disability evaluation process, the ALJ must determine whether a claimant's alleged impairment is equivalent to a number of listed impairments, commonly referred to as listings, that are acknowledged as so severe as to preclude

14

substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(iii); 20 C.F.R. pt. 404, subpt. P, App. 1; <u>Burnett</u>, 220 F.3d 112, 119.

In making this determination, the ALJ is guided by several basic principles set forth by the social security regulations and case law. First, if a claimant's impairment meets or equals one of the listed impairments, the claimant is considered disabled *per se* and is awarded benefits. 20 C.F.R. §416.920(d); <u>Burnett</u>, 220 F.3d at 119. However, to qualify for benefits by showing that an impairment, or combination of impairments, is equivalent to a listed impairment, a plaintiff bears the burden of presenting "medical findings equivalent in severity to *all* the criteria for the one most similar impairment." <u>Sullivan v. Zebley</u>, 493 U.S. 521, 531 (1990); 20 C.F.R. §416.920(d). An impairment, no matter how severe, that meets or equals only some of the criteria for a listed impairment is not sufficient. <u>Id.</u>

The determination of whether a claimant meets or equals a listing is a medical one. To be found disabled under step three, a claimant must present medical evidence or a medical opinion that his or her impairment meets or equals a listing. An administrative law judge is not required to accept a physician's opinion when that opinion is not supported by the objective medical evidence in the record. <u>Maddox v. Heckler</u>, 619 F. Supp. 930, 935-936 (D.C. Okl. 1984); Carolyn A. Kubitschek & Jon C. Dubin, Social Security Disability Law and Procedure in

Federal Courts, § 3:22 (2014), *available at* Westlaw SSFEDCT. However, it is the responsibility of the ALJ to identify the relevant listed impairments, because it is "the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits." Burnett, 220 F.3d at 120 n.2.

On this score, however, it is also clearly established that the ALJ's treatment of this issue must go beyond a summary conclusion, since a bare conclusion "is beyond meaningful judicial review." Burnett, 220 F.3d at 119. Thus, case law "does not require the ALJ to use particular language or adhere to a particular format in conducting his analysis. Rather, the function . . . is to ensure that there is sufficient development of the record and explanation of findings to permit meaningful review." Jones, 364 F.3d at 505. This goal is met when the ALJ's decision, "read as a whole," id., permits a meaningful review of the SLJ's Step 3 analysis. However, when "the ALJ's conclusory statement [at Step 3] is . . . beyond meaningful judicial review," a remand is required to adequately articulate the reasons for rejecting the claim at this potentially outcome-determinative stage. Burnett, 220 F.3d at 119.

### D.  A Remand is Appropriate in the Instant Case to Further Articulate the ALJ's Step 3 Conclusions.

In the instant case, we find that that the ALJ's articulation of the reasons for rejecting Lent's claim of disabling coronary artery disease at Step 3 of this sequential analysis are insufficient to allow for meaningful review of this aspect of the ALJ's

decision-making. On this score, as we have noted, there was a paucity of analysis concerning the application of listing 4.04, which deals with coronary artery disease, to Lent's case. That listing describes certain degrees of coronary occlusion which must be met, along with very serious limitations on the ability to independently initiate, sustain, or complete activities of daily living, in order to satisfy this listing requirement. 20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 4.04C.

With respect to this particular listing, the ALJ's analysis seemed spare, sweeping, and significantly incomplete. In its entirety, that analysis was as follows: "In this case the claimant has an MI [myocardial infarction] and successfully underwent an angioplasty with stenting. *There is no current evidence he meets any of the requirements of 4.04A, 4.04B or 4.04C*. Therefore the claimant does not meet of equal listing 4.04." (Tr. 22) (emphasis added).

This analysis is spare because it consists of only three sentences. This analysis is sweeping, however, because it insists that Lent's grave cardiac condition met none of the requirements of this listing. This analysis is then significantly incomplete because the ALJ did not reconcile this summary finding that Lent did not meet any of the requirements of listing 4.04C with the June 2016 angioplasty results, or the subsequent July 2016 cardiac catheterization results, both of which seemed to reveal degrees of coronary occlusion in excess of these listing requirements. In particular,

the July 2016 evaluation showed significant coronary artery occlusion even after an angioplasty procedure and identified 10% in-stent restenosis of the right coronary artery, 80% ostial stenosis of the first diagonal artery located in the midportion of the stent, and 50% stenosis of the first obtuse marginal vessel in the circumflex branch of the left coronary artery. (Tr. 433.) Significantly, the ALJ never mentioned these July 2016 findings when she determined that Lent met none of these listing requirements and never reconciled the degree of coronary occlusion documented in these reports with her conclusion that Lent met none of the listing requirements.

In our view, more is required here. Since this brief narrative does not address the pertinent evidence documenting Lent's coronary artery occlusion, this summary, sweeping and significantly incomplete evaluation simply "is . . . beyond meaningful judicial review." Burnett, 220 F.3d at 119. Therefore, a remand is required to adequately articulate the reasons for rejecting the claim at this potentially outcome-determinative stage of the claim adjudication process.

For their part, both Lent and the Commissioner seek to avoid this result by arguing for one of two more extreme outcomes. Thus, Lent contends that we should enter an order awarding him benefits under the Act since he believes that his condition satisfies this listing requirement. In contrast, the Commissioner invites us to reject Lent's Step 3 argument on grounds different than those expressly advanced

by the ALJ, arguing that even if we conclude that Lent otherwise met some elements of the listing requirement, he did not prove the existence of very serious limitations in the ability to independently initiate, sustain, or complete activities of daily living, yet another element of Listing 4.04C.

We have carefully considered each of these invitations but will decline to follow either of these proposed paths. At the outset, we decline Lent's invitation to award benefits. On this score, a decision to award benefits must meet a particularly exacting legal standards. Simply put, "[t]he decision to … award benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence in the record as a whole indicates that the claimant is disabled and entitled to benefits."  Morales v. Apfel, 225 F.3d 310, 320 (3d Cir. 2000) (quoting Podedworny v. Harris, 745 F.2d 210, 221-2 (3d Cir. 1984)). In the instant case, while we find that the ALJ's Step 3 conclusions were not sufficiently articulated, a shortcoming which requires a remand, we cannot state with certainty that the administrative record of the case has been fully developed and that substantial evidence in the record as a whole indicates that the claimant is disabled and entitled to benefits. Rather, we believe that task should be undertaken by the ALJ in the first instance through a more thorough evaluation of the evidence.

As for the Commissioner's contention that we should affirm the ALJ on the grounds that, while Lent otherwise met the listing requirement, he did not prove the existence of very serious limitations in the ability to independently initiate, sustain, or complete activities of daily living, in our view this contention also runs afoul of a settled tenet of judicial review in this field. Typically, we cannot affirm an ALJ's decision based upon evidence that the ALJ did not clearly consider or evaluate. See Fargnoli v. Massanari, 247 F.3d 34, 42 (3d Cir. 2001). The deferential standard of review that applies in these cases calls upon us to assess the ALJ's decision based upon the stated rationale for that decision, and we should refrain from speculating about what other evidence, which was not fully analyzed by the ALJ, might have shown.

In this case, the ALJ discounted Lent's claim at Step 3 by concluding in a summary manner that he met none of the listing requirements. This conclusion appears incomplete and incorrect. Given this error in the ALJ's articulated rationale, which rested on a finding of a total absence of proof meeting any listing element, we believe it would be inappropriate to affirm this decision based upon an alternate rationale that was never clearly considered or articulated by the ALJ. Therefore, we will decline the Commissioner's invitation to affirm this decision on grounds not stated in the decision itself.

Because the Court has found a basis for remand on these grounds, we need not address Lent's remaining arguments. To the extent that any other error occurred, it may be remedied on remand. Finally, we note that nothing in this Memorandum Opinion should be deemed as expressing a judgment on what the ultimate outcome of any reassessment of this evidence should be. Rather, the task should remain the duty and province of the ALJ on remand.

## IV.   <u>Conclusion</u>

Accordingly, because we find that the ALJ's decision does not sufficiently articulate the rationale for the Step 3 finding in this case,  IT IS ORDERED that Lent's request for a new administrative hearing is GRANTED, the final decision of the Commissioner denying these claims is VACATED, and this case is REMANDED to the Commissioner to conduct a new administrative hearing.

An appropriate order follows.

Submitted this 30th  day of April 2019.


*/S/ Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge